UNITED STATES of America, Plaintiff,

v.

1.357 ACRES OF LAND et al., Defendants.

DEARBORN JACKSON RECREATION, INC., Defendant Lessee-Appellant,

v.

Shepherd BROOKS, Francis Gardner Jackson, Graham Aldis, James Jackson, Jr., and Gardner Emmons, as Trustees under Declaration of Trust, Dated January 27, 1914, Defendants Lessors-Appellees.

No. 13709.

United States Court of Appeals Seventh Circuit.

Sept. 24, 1962.

James J. Reidy, Chicago, Ill., for defendant appellant.

Robert S. Cushman, Claude E. Carr, Jr., Chicago, Ill., for defendant appellee.

Before KNOCH, CASTLE and KILEY, Circuit Judges.

KNOCH, Circuit Judge.

This appeal was taken by Dearborn Jackson Recreation, Inc., defendant lessee-appellant, (hereinafter somtimes called "Lessee") from an order denying it a share in the award for the taking of the building and land at the northeast corner of Jackson and Dearborn Streets in Chicago, Illinois, which was condemned by the government for public use.

The land and the building were owned in fee simple by Shepherd Brooks, Francis Gardner Jackson, Graham Aldis, James Jackson, Jr., and Gardner Emmons, as Trustees under Declaration of Trust, dated January 27, 1914, defendants lessors-appellees herein, hereinafter called "Lessors". Lessee occupied a por-

tion of the building under a lease which provided:

"14. Eminent Domain: If the whole or any substantial part of demised premises shall be taken or condemned by any competent authority for any public use or purpose, the term of this lease shall end upon, and not before, the date when the possession of the part so taken shall be required for such use or purpose, and without apportionment of the award. Current Rent shall be apportioned as of the date of such termination."

and

"10. * * * All installations, additions, hardware, non-trade fixtures and improvements, temporary or permanent, in or upon the premises, whenever and whether placed there by Lessee or Lessor, shall be Lessor's property and shall remain upon the premises upon termination of the term by lapse of time or otherwise, all without compensation, allowance or credit to Lessee; * * * If Lessee does not remove Lessee's furniture, floor coverings, radiator covers, Venetian blinds, window ventilators, trade fixtures and other personal property of all kinds from the premises prior to the end of the term, however ended, Lessee shall be conclusively presumed to have conveyed the same to Lessor under this lease as a bill of sale without further payment or credit by Lessor to Lessee."

Lessee initially sought compensation for the taking of the unexpired term of its lease, and for the taking of personal property so incorporated into the building by Lessee as to make the personal property part of the realty. These included:

Bowling Lanes
Special Lighting Fixtures
Air Conditioning System
Permanent Fixtures
Beer Dispensing System
Neon Signs
Bars and Booths

With respect to any apportionment of the total condemnation award (as compensation for the loss of Lessee's leasehold) the District Court granted summary judgment in favor of Lessors. Lessee has not appealed from that decision. Summary judgment was denied with respect to compensation for the fixtures described above.

The District Court found as a fact, and it is not disputed in this Court, that these fixtures were either so attached, or so uniquely designed for their particular location in the condemned building, that they could not be removed without destroying all but a negligible salvage value.*

Chief Judge Campbell of the District Court, to whom the fixture claim was transferred ruled that:

"The total compensation for the premises, including the permanent trade fixtures, will be set by Judge Hoffman when the final award is made. Thereafter, the lessees, * * will receive their proportional share of the award based upon their trade fixtures which are a part of the realty. * * * Dearborn-Jackson Recreation, Inc., may assert a claim for compensation against the final condemnation award for the trade fixtures which are a part of the realty."

The total value of all the property condemned was stipulated to be $735,000. The judgment entered on that stipulation, provided that:

"* * * Dearborn-Jackson Recreation, Inc. * * * shall partici-

pate in the award of just compensation to the extent, if any, found by this Court upon hearing on distribution of the award and judgment entered thereon."

A hearing was subsequently held before Judge Hoffman, at which Lessee offered the evidence of an expert witness, John M. Koetz, who testified only to the fair market value of the trade fixtures as $97,255. Lessee offered this evidence as:

"* * * a prove-up of the values of the trade fixtures affixed to the realty of Dearborn-Jackson Recreation, Inc. which was heretofore found by the Honorable Judge Campbell in a ruling as to when trade fixtures were seized by the United States Government, when they seized the fee * * *."

Counsel for Lessors then stated:

"* * * I would state now my position that if all he intends to prove up is the fair cash market value of the fixtures, I object to any such testimony unless it is coupled with the testimony as to the amount by which these fixtures enhance the fair cash market value."

to which the Court responded:

"That is my view of the law, and that is the law I will follow here, counsel, but you may proceed. There is no jury here."

At the conclusion of the evidence, the Court ruled:

"I have received evidence here regarding the value of the fixtures from the expert, Mr. Koetz, * * *

---

*—Chief Judge Campbell found that:

[I]t was also shown that most of these items, such as the bars, work bars, and sink units, are so attached to the premises as to make them irremovable in their present state.

The major item involved, the 12 pair of bowling alleys, presents an unusual situation. Although attached to the premises, alleys are generally removable and resalable. Here, however, the lessee offered evidence to show that due to the present exit facilities at the premises the alleys to be removable and resalable would have to be cut three times instead of the normal two times. [footnote omitted] In so doing, aside from the undesirability of cutting the alleys at all, an extra ¼ inch would be lost because of the width of the third saw cut, thus making a total loss for the three cuts of ¾ inch from the present length of 79 feet. In reassembling the alleys, therefore, their total length would not meet the minimum length requirements of the American Bowling Congress, which is 79 feet with a tolerance of only ½ inch more or less.

the evidence as introduced does not demonstrate that these fixtures enhance the value of the real estate. I cannot but make a finding that the evidence introduced by the respondent, and I do so find, did not enhance the value of the land."

After review of the record we are compelled to agree with the learned District Judge.

It is Lessee's position that the measure of compensation in a condemnation case is the market value of what the tenant has lost, and that the District Court has made findings contrary to the only evidence of value which was presented.

■ The Lessors argue that Lessee's rights in its fixtures consisted of the right to use them during the term of the lease, and to remove them upon termination of the lease, from whatever cause, including condemnation or expiration of the term. A typewritten rider to the lease provided:

"7. Upon the termination of this lease, by lapse of time or at the option of either party under the provisions of this lease, or otherwise, Lessee, if not in default under this lease, shall be entitled to remove, on or before the last day of the term, all of Lessee's equipment, trade fixtures, personal property and installations then located in the demised premises, but all partitions, roofs, walls, ceilings and permanent installations and additions thereto, and all hardware and non-trade fixtures and improvements, whether temporary or permanent, in or upon the premises, and whether placed there by Lessee or Lessors, shall be Lessors' property and shall remain upon the premises without compensation, allowance or credit to Lessee. Lessee shall also be permitted to remove all air-conditioning equipment purchased and installed by Lessee. If this lease is terminated due to default or failure of performance by Lessee the bowling alleys and other equipment and trade fixtures shall not be removable

by Lessee. Upon the expiration of this lease by lapse of time, such alleys and equipment shall be treated as trade fixtures of Lessee."

The lease contemplated condemnation, and we agree with the Lessor that Lessee was in the same position when the property was taken as it would have been in at the end of the term of the lease. Its right under the lease at the end of the term was to remove the trade fixtures. This right would be of no more value at the end of the term than it proved to be upon the taking under condemnation.

In their location in the building, coupled with a leasehold right to use them as affixed to the realty, the fixtures had substantial value. Apart from the premises for which they were designed and to which they were affixed, the fixtures possessed only negligible salvage value.

■ By the terms of its lease, Lessee is barred from compensation for loss of the leasehold which alone gave substantial value to these fixtures.

Lessors rely on Metropolitan West Side Elevated R. R. Co. v. Siegel, 161 Ill. 638, 650–651, 44 N.E. 276 (1896) which we find persuasive. The Illinois Supreme Court reversed the Trial Judge's allowance of compensation for fixtures permanently attached to a building, which had value to the lessee only during lessee's occupancy of the building. The Illinois Supreme Court held that the value of lessee's use of its fixtures for the unexpired portion of its term should have been included in the total compensation for the leasehold which had been condemned.

In the case at bar, however, Lessee cannot share in the award and cannot recover for the value of its lost leasehold because of the terms of its lease. Lessee is in the position of the tenant in United States v. Petty Motor Co., 327 U.S. 372, 376, 66 S.Ct. 596, 599, 90 L.Ed. 729 (1946). There the tenant had a similar condemnation clause in its lease. The tenant was held to have:

" * * * contracted away any rights that it might otherwise have

had. We are dealing here with a clause for automatic termination of the lease on a taking of property for public use by governmental authority. With this type of clause, at least in the absence of a contrary state rule, the tenant has no right which persists beyond the taking and can be entitled to nothing."

The judgment of the District Court is affirmed.